UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA DEGROOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:17 CV 202 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Cynthia DeGroot brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite DeGroot's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

DeGroot filed her applications for DIB and SSI on August 10, 2011, claiming that she

became unable to work on October 1, 2008.[1] (Tr. 126-32.) In her Disability Report, DeGroot alleged disability due to fibromyalgia, degenerative disc disease, joint disease, lower lumbar problems, hypertrophy, neck and back problems, carpal tunnel syndrome, thyroiditis, GERD, ulcers, hiatal hernia, sliding hernia in throat, anxiety, hallucinations, and "other mental health issues." (Tr. 160.) DeGroot was 40 years of age at the time of her alleged onset of disability. Her applications were denied initially. (Tr. 77.) Following an administrative hearing, DeGroot's claims were denied in a written opinion by an ALJ, dated April 18, 2013. (Tr. 9-20.)

After the Appeals Council of the Social Security Administration (SSA) denied review, DeGroot filed a Complaint in the United States District Court for the Eastern District of Missouri. (Tr. 1149-69.) On September 28, 2015, the undersigned reversed and remanded the case to the Commissioner for further proceedings, including the consideration of DeGroot's thyroid disorder and tremors. (Tr. 1169.) On remand, a second ALJ held another hearing and considered additional medical evidence. (Tr. 1025-91.) On September 8, 2016, the ALJ denied DeGroot's claims in a written opinion. (Tr. 1028-47.) DeGroot then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on October 3, 2017. (Tr. 982-90.) Thus, the decision of the second ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, DeGroot first argues that the "hypothetical questions that properly evaluated the claimant's condition call for a finding of disabled." (Doc. 12 at 3.) She next argues that the ALJ "failed to find that the claimant's headaches were a severe impairment." *Id.* at 7. Finally, DeGroot argues that the ALJ "did not give the proper weight to tremors and headaches as required in the remand order." *Id.* at 9.

---

[1] DeGroot subsequently amended her alleged onset of disability date to July 10, 2009. (Tr. 994.)

## II. The ALJ's Determination

The ALJ first found that DeGroot met the insured status requirements of the Social Security Act through March 31, 2013. (Tr. 1031.) He found that DeGroot had not engaged in substantial gainful activity since July 10, 2009, the amended alleged onset date. *Id.* In addition, the ALJ concluded that DeGroot had the following severe impairments: obesity, fibromyalgia, degenerative disc disease of the cervical spine, disorder of the lumbar spine, anxiety/posttraumatic stress disorder ("PTSD"), depression, substance addiction disorder, a history of carpal tunnel syndrome, and a history of a thyroidectomy with post-surgery acquired hypothyroidism. *Id.* The ALJ found that DeGroot did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 1032.)

As to DeGroot's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift 20 pounds occasionally and ten pounds frequently; can walk or stand for six hours out of an eight-hour workday, two hours at a time; can sit for six hours out of an eight-hour workday, four hours at a time; can occasionally climb stairs, but never climb ropes, scaffolds, or ladders; can occasionally balance, stoop, and crouch; can never crawl; is limited to frequent reaching, handling, feeling, stoop, and crouch; can never crawl; is limited to frequent reaching, handling, feeling, and fingering; is limited to occasional overhead reaching and handling; must avoid prolonged exposure to temperature extremes, chemicals, dust, fumes, noxious odors, humidity, and vibrating machinery; should avoid unprotected heights and hazardous moving machinery; and is limited to simple, routine, repetitive work tasks with occasional interaction with co-workers and no interaction with the general public.

(Tr. 1035.)

The ALJ found that DeGroot was unable to perform any past relevant work, but was

capable of performing other jobs existing in significant numbers in the national economy, such as photocopy machine operator, shipping/receiving weigher, and folding machine operator. (Tr. 1045-46.) The ALJ therefore concluded that DeGroot was not under a disability, as defined in the Social Security Act, from July 10, 2009, through the date of the decision. (Tr. 1047.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on August 10, 2011, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on August 10, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in

the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:  activities

of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

DeGroot's claims raise the following issues: whether the RFC formulated by the ALJ is supported by substantial evidence, whether the ALJ erred at step two of the sequential evaluation, and whether the ALJ complied with this Court's directives. The undersigned will address these issues in turn, beginning with the Court's remand order.

**1.      The District Court's Remand Order**

DeGroot argues that the ALJ failed to follow the directives of this Court on remand. Specifically, she contends that the ALJ failed to properly consider DeGroot's hand tremors and headaches, conditions she suggested the Court found "to be severe and disabling." (Doc. 12 at 9.)

In the Memorandum and Order dated September 28, 2015, the Court found as follows, in relevant part:

> In sum, the ALJ did not adequately consider DeGroot's thyroid condition, either at step two or later in the sequential analysis. The ALJ did not discuss the

> fact that DeGroot underwent extensive treatment for her thyroid condition including surgery and reported significant symptoms resulting from the condition. DeGroot's tremors were not considered either, whether as a symptom of DeGroot's thyroid condition or an independent impairment, despite extensive evidence of treatment for such. The ALJ's error was not harmless because she did not consider the effects of DeGroot's thyroid condition together with all impairments both severe and non-severe in determining her RFC. Thus, the case must be remanded so that the ALJ may conduct a thorough evaluation of the severity of DeGroot's thyroid condition at step two of the sequential analysis. Regardless of whether the ALJ finds DeGroot's thyroid condition to be severe on remand, the ALJ should include the effects of this impairment, including DeGroot's tremors, when determining DeGroot's RFC.

(Tr. 1166.) With regard to DeGroot's headaches, the undersigned further noted that the ALJ did not discuss DeGroot's symptoms of "fatigue, fever, chills, nausea, headaches, and heat and cold intolerance." (Tr. 1165.)

DeGroot mischaracterizes the Court's findings in the remand order. The undersigned did not find DeGroot's headaches or tremors were severe, much less disabling. Rather, the Court directed the ALJ to undertake this analysis on remand by considering whether DeGroot's thyroid impairment and related symptoms were severe and their impact, if any, on DeGroot's RFC.

On remand, the ALJ found DeGroot's thyroid impairment was severe at step two. (Tr. 1031.) When determining DeGroot's RFC, the ALJ discussed DeGroot's reported tremors but found that they did not impact her RFC. (Tr. 1041.) The ALJ discussed DeGroot's headaches at step two, but found that they did not occur with the frequency to interfere with her ability to engage in basic work activities and were not, therefore, severe. (Tr. 1032.)

Thus, the second ALJ complied with the requirements of the remand order. The issue of whether the ALJ's conclusions are supported by substantial evidence will be considered below.

**2. Step Two Determination**

DeGroot argues that the ALJ erred in finding DeGroot's headaches were a non-severe impairment at step two.

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of proving her impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the claimant. *Id.; Dewald v. Astrue,* 590 F.Supp.2d 1184, 1200 (D.S.D. 2008). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Kirby,* 500 F.3d at 707.

A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 416.920(c), 416.921. An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the claimant's physical or mental ability to do basic work activities. *Kirby,* 500 F.3d at 707; 20 C.F.R. § 416.921(a). Basic work activities concern the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 416.921(b). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The sequential evaluation process terminates at Step Two if the impairment has no more than a minimal effect on the claimant's ability to work. *Kirby,* 500 F.3d at 707; *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989).

Here, the ALJ determined that DeGroot's headaches were not a severe impairment because they did not cause any limitations on her ability to work. The ALJ stated as follows:

> [A]lthough the claimant has received treatment for recurrent tension headaches, they are not documented to result in neurological deficits or periods of incapacity,

and are not objectively documented to occur with the frequency one would expect
if they interfered with her ability to engage in basic work activities on a regular and
continuing basis.

(Tr. 998.)

The record indicates that the ALJ's conclusion of non-severity is supported by substantial evidence. DeGroot first challenges the ALJ's characterization of the headaches as "tension headaches," arguing that she experienced migraines with symptoms including nausea and vomiting, photosensitivity, inability to concentrate, and mood changes. At the June 2016 hearing before the ALJ, DeGroot testified that she experienced "headaches" every day. (Tr. 1075.) When asked to clarify the nature of these headaches, DeGroot described the headaches as "mostly tension," with migraine headaches occurring "two to three times a month." *Id.* DeGroot further testified that she had been having "problems with headaches" since she was "five or six" years of age. (Tr. 1076-77.) She explained that the headaches worsened in severity two to three years prior to the hearing. (Tr. 1077.) The ALJ did not err in characterizing DeGroot's impairment as "tension headaches," when this term is consistent with DeGroot's own testimony.

As DeGroot points out in her Brief, her treating pain management physicians and nurses regularly documented her complaints of and diagnoses with headaches and "migraines." (Tr. 1445, 1448, 1456, 1459, 1470, 1481, 1493, 1503, 1504, 1518, 1529, 1542.) The ALJ accurately stated that there is no evidence that DeGroot's headaches or migraines resulted in neurological deficits. *Id.* DeGroot testified that she was taking Effexor[2] for her headaches at the time of the hearing. (Tr. 1077.)

When considering DeGroot's RFC, the ALJ acknowledged DeGroot's testimony regarding her daily headaches or migraines. (Tr. 1037.) DeGroot also suffers from neck pain due to

---

[2]Effexor is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited February 22, 2019).

Page **12** of **20**

degenerative disc disease of the cervical spine, a condition which DeGroot acknowledges is closely related to her head pain. (Doc. 12 at 8, "If neck pain is also considered headaches, it is found numerous other times in the record..."). The ALJ stated that DeGroot's "combination of depression, anxiety, tension headaches, and pain from other ailments reportedly causes her great difficulty concentrating." *Id.* He found that DeGroot's degenerative disc disease of the cervical spine was a severe impairment. (Tr. 1031.) The ALJ discussed the pain management treatment DeGroot received for her various impairments, including neck pain. *Id.* He limited DeGroot to a restricted range of light work due to her musculoskeletal and other physical impairments; with the additional limitation to simple, routine, repetitive work due to her combined mental impairments and physical pain. (Tr. 1041.)

Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process. *See Coleman v. Astrue*, No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013). Here, the Court finds that any error in the ALJ's failure to find DeGroot's headaches severe at step two was harmless. The ALJ found DeGroot had nine severe impairments, including degenerative disc disease of the cervical spine. When considering DeGroot's RFC, the ALJ discussed the effects of her headaches in combination with all of her other impairments, severe and non-severe. Thus, the ALJ did not err in finding that plaintiff's headaches were not a severe impairment.

3. **RFC Determination**

DeGroot argues that the ALJ erred in determining her RFC.[3] Specifically, DeGroot claims

---

[3] Although the ALJ found DeGroot has multiple severe mental impairments, DeGroot only challenges the ALJ's physical RFC determination. Consequently, the Court's discussion herein will be limited to DeGroot's physical impairments.

that she has greater limitations in her ability to manipulate with her hands than found by the ALJ. She contends that this additional limitation would have resulted in a finding of disability.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

DeGroot argues that the ALJ improperly discredited the opinions of Drs. Ann Winkler and Bruce Schlafly in determining her RFC.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52

F.3d 784, 785-86 (8th Cir. 1997)).  The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions.  *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value.  *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012).  Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion.  20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The ALJ obtained opinions from Dr. Winkler, a State agency medical consultant.  After reviewing the record, Dr. Winkler authored opinions on April 15, 2016, and May 31, 2016.  (Tr. 1327-32, 1369-80.)  In her April opinion, Dr. Winkler found that DeGroot had no sitting limitations; could stand or walk six hours in an eight-hour workday; and could lift up to ten pounds frequently and twenty pounds occasionally.  (Tr. 1332.)  Dr. Winkler stated that DeGroot could occasionally reach, handle, finger, and feel with her left hand from February 2011 to June 2011, and with her right hand from February 2011 to July 2012; and could frequently reach, handle, finger, and feel at all other times.  *Id.*  The dates provided by Dr. Winkler coincide with DeGroot's diagnosis of carpal tunnel syndrome in February 2011, and her carpal tunnel release surgeries in June 2011 and July 2012.  (Tr. 240, 291-92, 515.)  In her May 2016 opinion, Dr. Winkler expressed the opinion that DeGroot could frequently reach, handle, finger, and feel, and

did not set forth different limitations for specific time periods as in her previous opinion. (Tr. 1377.)

The ALJ accorded "significant weight" to Dr. Winkler's opinions, noting she was an impartial medical expert and her opinions were well-supported by the evidence of record. (Tr. 1042.) The ALJ stated he was adopting Dr. Winkler's opinions with the following exception:

> the undersigned rejects the conclusion that the claimant would be limited to occasional manipulative tasks with the right hand from February 2011 to July 2012 and left hand from February 2011 to June 2011. Such limitations are not supported by the weight of the evidence. As is detailed hereinabove, even during the periods immediately preceding the claimant's two carpal tunnel surgeries, physical examinations did not yield evidence of motor, sensory, reflex, or strength deficits reasonably consistent with the foregoing manipulative limitations.

(Tr. 1042.)

DeGroot argues that the ALJ gave no reasons for doubting the validity of Dr. Winkler's conclusion. She further argues that, in rejecting part of Dr. Winkler's opinion, the ALJ violated "the picking and choosing rule" by using only favorable portions of the opinion and ignoring the other evidence. (Doc. 12 at 5-6.) The undersigned disagrees. First, the ALJ was not required to choose an opinion upon which to rely. *See Martise,* 641 F.3d at 927. Second, the ALJ in this case did not ignore portions of Dr. Winkler's opinion, but rather, rejected a specific opinion that he found was unsupported by the record. This is precisely the duty of the ALJ.

Moreover, the ALJ provided a good reason for rejecting Dr. Winkler's opinion regarding DeGroot's manipulative limitations. The ALJ's finding that examinations did not indicate evidence of deficits consistent with manipulative limitations is supported by the medical record. For example, a March 2011 examination revealed that DeGroot had normal strength and range of motion in her wrists and hands, without any swelling, tenderness, or effusion. (Tr. 350.) At other examinations in March 2011 through July 2012, DeGroot had normal range of motion,

strength, and tone in her upper extremities. (Tr. 381, 388, 392, 402, 347, 350, 458, 463, 496, 498, 851, 861, 865, 874, 884, 948, 952, 954, 958.)

Further, a finding that DeGroot was more limited in the use of her left hand from February 2011 to June 2011 could not be disabling as a matter of law, because those limitations only lasted five months and did not meet the twelve-month durational requirements of the Act. *See* 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

DeGroot also contends that the ALJ should have re-contacted Dr. Winkler because she did not have the opportunity to review the records of hand surgeon Bruce Schlafly, M.D. DeGroot argues that Dr. Schlafly's June 3, 2016 finding of instability on the left thumb is supportive of Dr. Winkler's opinion and of the presence of continuing manipulative issues.

Dr. Schlafly's records indicate that DeGroot complained of numbness and tingling in the right index, long, and ring fingers; and weakness and pain in her hands. (Tr. 1607.) Upon examination, DeGroot was able to make a good fist with both hands. *Id.* Her primary complaint in the left hand was thumb pain, and some tenderness was noted in the area of the MCP joint, but no actual trigger was appreciated. *Id.* Dr. Schlafly found DeGroot had some instability due to loss of integrity of the ulnar collateral ligament, and may need a fusion at the MCP joint of the left thumb to correct that problem. *Id.* He administered a cortisone injection. *Id.*

The ALJ did not err in failing to re-contact Dr. Winkler. The ALJ was aware of Dr. Schlafly's treatment notes and specifically discussed his findings when assessing DeGroot's RFC. (Tr. 1038-39.) In light of the extensive medical evidence in the record noting few abnormalities on examination of DeGroot's hands and upper extremities following her carpal tunnel release surgeries, Dr. Schlafly's single treatment note did not require further development of the record. Significantly, even if this evidence could be considered to support a deterioration in DeGroot's

condition, it was obtained a mere three months prior to the ALJ's determination and does not meet disability durational requirements.

Finally, DeGroot argues that the ALJ should have included greater limitations to account for her hand tremors. This Court discussed DeGroot's allegation of tremors in its September 2015 opinion remanding this matter. (Tr. 1158-66.) The undersigned concluded as follows:

> Although the origin of DeGroot's tremors is not entirely clear from the record, DeGroot has consistently complained of hand tremors from February 2011 through the date of the hearing. DeGroot also testified at the administrative hearing that she experienced hand tremors. (Tr. 45.) Despite this evidence of hand tremors, whether as a symptom of DeGroot's thyroid condition or another condition, the ALJ did not discuss this impairment in her opinion. Given the medical evidence discussed above, it is questionable whether DeGroot could perform bilateral gross and fine manipulation one third to two thirds of the workday or that she could perform the positions of "hand packer" or "production worker assembler" as found by the ALJ.

(Tr. 1165.) Upon remand, the ALJ was directed to consider the effects of DeGroot's thyroid condition, "including DeGroot's tremors," when determining her RFC. (Tr. 1166.)

The ALJ on remand addressed DeGroot's tremors as follows during his RFC analysis:

> The claimant has a history of a thyroidectomy with post-procedure acquired hypothyroidism; however, the only persistently complained-of abnormality related to that condition is her reported tremors. *Although she consistently complained of tremors, she did not present with them upon physical examination with any regularity that would support a finding that she is unable to frequently reach, handle, finger, or feel.*

(Tr. 1041) (emphasis in original).

The ALJ's finding regarding DeGroot's tremors finds support in the medical record. The record documents DeGroot's complaints of hand tremors beginning in 2011, but contains few observations of tremors by examining physicians. The most notable finding was Dr. Natasha Ware's December 2012 observation of "pronounced resting tremor in the bilateral

fingers, hands, and wrists," discussed in the Court's previous opinion. (Tr. 939.) The next month, however, Dr. Ware found DeGroot's resting tremors were "markedly decreased." (Tr. 930.) Medical evidence submitted upon remand dated from September 2015 through April 2016 reveals DeGroot occasionally complained of tremors, however, tremors were not documented upon examination. (Tr. 1398, 1445, 1448, 1459, 1470, 1481, 1493-94, 1505, 1517, 1530, 1542, 1554, 1566, 1581.)

In sum, the RFC formulated by the ALJ is supported by substantial evidence. The ALJ's determination that DeGroot is capable of performing a restricted range of light work is supported by the opinion of Dr. Winkler. Notably, Dr. Winkler did not believe DeGroot's tremors precluded her from frequently reaching, handling, fingering, and feeling, as found by the ALJ. The ALJ complied with the directives of the Court's remand order by evaluating DeGroot's thyroid condition at step two and considering the impact of all of DeGroot's severe and non-severe impairments—including her tremors and headaches—when determining her RFC. In restricting DeGroot to a very limited range of simple, light work, the ALJ adequately accounted for the supportable degree of limitation due to DeGroot's combination of physical and mental impairments. The ALJ then found, consistent with the testimony of a vocational expert, that DeGroot could perform the positions of photocopy machine operator, shipping/receiving weigher, and folding machine operator. (Tr. 1045-46.)

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although DeGroot articulates why a different conclusion might have been

reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination").

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2019.